IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLY PORRAS (#B-61246), | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 13-cv-3368 |
| | ) | |
| v. | ) | Judge: Robert M. Dow, Jr. |
| | ) | |
| CHERI TARR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Billy Porras, a state prisoner, brought this *pro se* 42 U.S.C. § 1983 action against several Stateville Correctional Center and Pontiac Correctional Center employees, claiming due process violations during a prison disciplinary proceeding. Before the Court is Defendants' motion for summary judgment [56]. Defendants contend that the rules of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), bar Plaintiff's claims. Alternatively, Defendants contend that Plaintiff's disciplinary proceedings comported with constitutional due process requirements. For the reasons set forth below, Defendants' motion for summary judgment [56] is granted.

### I. Background

#### A. Northern District of Illinois Local Rule 56.1

Under Local Rule 56.1(a)(3), as well as Rule 56(c), a party that moves for summary judgment must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits,

parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)). The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment. See *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008). Any uncontested fact in the movant's Rule 56.1 statement that is supported by the record and not addressed by the opposing party may be considered true. See *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); see also Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure."). Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).

Consistent with the Local Rules, Defendants filed a statement of uncontested material facts along with their motion for summary judgment. [57.] Each substantive assertion of fact in the Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, Defendants filed and served on Plaintiff a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. [59.]

In response, Plaintiff filed a six-page memorandum of law. [66.] However, Plaintiff did not respond to Defendants' Local Rule 56.1(a)(3) statement of uncontested material facts. Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) statement are deemed admitted. See N.D. Ill. L.R. 56. 1(b)(3)(C) ("All material facts set forth in the statement required

of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); see also *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010). With the above standards in mind, the Court turns to the facts of this case.

B.     **Relevant Undisputed Facts**

On January 6, 2012, Plaintiff, then a prisoner at Stateville Correctional Center, received an Offender Disciplinary Report ("DR") placing him under investigative status. [57, ¶ 11.] That same day he was transferred from Stateville to Pontiac Correctional Center. [57-1, at 5.]

Three days later, Plaintiff received a new DR (that replaced the old DR), charging him with: (1) Conspiracy to Commit Assault, and (2) Security Threat Group ("STG") Activity / Unauthorized Organizational Activity. [57, ¶ 12.] The DR identifies these offenses by name and number. [57-1, at 10.] The DR further states that Plaintiff was being charged in conjunction with the Stateville Investigation Unit's investigation into Latin Folks gang activity at the prison. [*Id.*]

In a 12-paragraph narrative, the DR details the findings of that investigation, which were based upon information received by six confidential informants and the observations of the Stateville investigators. [57-1, at 11.] The DR says that three confidential informants had identified Plaintiff as the overall leader of the Latin Folks at Stateville. [*Id.*] The DR explains that a fourth confidential informant relayed an incident to Stateville staff regarding a Latin Folks member who was in "bad graces" and was beaten by other Latin Folks members. This informant explained that the victim had been directed to speak with Plaintiff because Plaintiff had the power to stop the assault. [*Id.*] The DR goes on to say that two additional confidential informants told Stateville investigative staff that Latin Folks leadership had instructed all members to attend the Catholic Christmas Mass to discuss gang business. [*Id.*] Stateville investigators observed

Plaintiff at the Mass in "deep conversation" with other Latin Folks members whom investigators had also identified as leaders in the gang. [*Id.*]

On January 17, 2012—11 days after his transfer to Pontiac—Plaintiff went before the Adjustment Committee at Pontiac for a hearing on the DR. [57, ¶ 13.] He pleaded not guilty to the charges. [57, ¶ 18.] At the hearing, Plaintiff submitted a written statement in which he denied being a leader of the Latin Folks, denied any involvement in the assault of Latin Folks members at Stateville, and faulted the DR for not describing the substance of any of the "deep conversations" observed at the Christmas Mass. [57, ¶ 14.] Plaintiff retained a copy of his written statement. [57, ¶ 14.] Plaintiff chose not to submit any other evidence, and also chose not to present any witnesses at the hearing. [57, ¶ 15.]

The Adjustment Committee found Plaintiff guilty of conspiracy to commit assault and unauthorized organizational activity. [57, ¶ 20.] The Adjustment Committee articulated the basis of its guilty finding in a written Final Summary Report dated January 17, 2012, which was approved by the Chief Administrative Officer at Pontiac on January 25, 2012. [57, ¶ 19; 57-1, at 16–18.] The Committee's articulated basis in the Final Summary Report consisted of the findings of the Stateville investigation, as detailed in the DR. [57, ¶ 19; 57-1, at 16–18.] The Final Summary Report also reproduced Plaintiff's written statement. [57-1, at 16–18.] The Adjustment Committee provided a copy of the Final Summary Report to Plaintiff. [57, ¶ 22.]

As punishment, Plaintiff received revocation of three months good time credits, six months of C grade status, six months of segregation, six months of audio/visual restriction, and six months of contact-visit restrictions. [57, ¶ 21.] The Committee's judgment has never been overturned or expunged. [*Id.*]

On February 5, 2012, Plaintiff submitted a grievance complaining that he was denied due process in conjunction with the above-described disciplinary proceedings. [57, ¶ 23; 57-1, at 23–24.] The grievance officer denied Plaintiff's grievance on February 23, 2012, based upon a review of all the available evidence and a compliance check with procedural due process safeguards. [57, ¶ 24.]

Plaintiff filed this lawsuit on May 3, 2013. He named as Defendants the various officials involved in his disciplinary proceedings: the officer who issued his disciplinary ticket (Tejada); the officer who completed his DR (Tarr); the members of the Adjustment Committee that conducted his hearing and found him guilty (Joyner and Hamilton); and the Chief Administrative Officer who finally approved his discipline (Pfister). He also sued the grievance officer who handled his grievance (Hastings). [See 57-1.]

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. To survive summary judgment, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth*, 476 F.3d at 490. Moreover, evidence submitted in opposition to summary judgment

must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, will also be considered. *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003).

The Court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-moving party. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## III. Analysis

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights both in conducting his disciplinary proceedings and in handling his grievance. First, he contends that Defendants Tejada, Tarr, Joyner, Hamilton, and Pfister failed to conduct disciplinary proceedings that comported with due process in the following respects: (1) Plaintiff received inadequate notice because his DR did not clearly and concisely identify the offense or state the specific time, place, and date of the offense, both of which are allegedly violate various Illinois administrative directives; (2) the DR did not necessarily comply with Illinois administrative rule requiring the issuance of a DR within eight days of the offense because the date of the offense cannot be determined from the DR; (3) the Final Summary Report contained only a portion of Plaintiff's written statement in violation of Illinois administrative rules; (4) Defendants did not find Plaintiff guilty based upon "clear facts;" and (5) Defendants did not establish the reliability

6

of their confidential informants. Second, Plaintiff claims that the handling of his grievance failed to comport with due process because Defendant Hastings failed to thoroughly investigate Plaintiff's complaints.

### A. Disciplinary Proceedings

Defendants move for summary judgment on Plaintiff's disciplinary-proceedings claims on two grounds. First, Defendants argue that the rules of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), bar Plaintiff's claims. Second, Defendants contend that even if Plaintiff's claims are not *Heck* barred, there is no factual dispute that Plaintiff received all the procedural safeguards that due process requires.

#### 1. *Heck* Bar

Under the Supreme Court's decisions in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), a prisoner may not bring a § 1983 suit that, if successful, would necessarily undermine a still-valid disciplinary conviction that affects the fact or duration of the prisoner's sentence, such as the revocation of good time credits. *Heck*, 512 U.S. at 486–87; *Edwards*, 520 U.S. at 648; see also *DeWalt v. Carter*, 224 F.3d 607, 617–18 (7th Cir. 2000). The prisoner's § 1983 suit must wait until he has "achieve[d] favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004); see also *Edwards*, 520 U.S. at 648. In determining whether a § 1983 suit is *Heck* barred, a court should focus in particular on how the plaintiff frames his complaint and the consequences that would flow from a favorable decision. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); see also *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (the question is not whether it would be theoretically possible to plead a

claim without questioning the validity of the conviction, but rather whether the plaintiff has in fact made "allegations that were inconsistent with the conviction's having been valid").

Regarding procedural due process claims, the Seventh Circuit has explained that *Heck* bars a certain "category" of allegations, but not others. See *Clayton-El v. Fisher*, 96 F.3d 236, 242–43 (7th Cir. 1996); *Dixon v. Chrans*, 101 F.3d 1228, 1230–31 (7th Cir. 1996). More specifically, *Heck* bars "traditional" due process claims, which are those claims where "to decide that [the prisoner] is entitled to damages would be to determine that his due process rights were violated in the manner in which the disciplinary proceedings were conducted, and that determination, in turn, would call into question the results of the hearing." *Dixon*, 101 F.3d at 1230–31; *Clayton-El*, 96 F.3d at 242–44. The only claims that escape *Heck*'s bar are the narrow category that are "not dependent upon anything that happened at the disciplinary hearing" and do not require a federal court to "decide whether the disciplinary process against [the prisoner] reached the right result." *Clayton-El*, 96 F.3d at 243 (explaining that a claim that a prisoner never received notice of a hearing is in the category of claims immediately cognizable under § 1983).

This delineation between due process claims accords with the Supreme Court's holding in *Edwards*, where the Court concluded that *Heck* barred the plaintiff's claim that prison officials concealed exculpatory witness statements and refused to ask specified questions of witnesses during his disciplinary hearing. *Edwards*, 520 U.S. at 648. In so holding, the Court rejected a rule that a prisoner could always challenge the procedures employed in a disciplinary hearing without necessarily challenging the results. The Court explained that such a rule "disregards the possibility, clearly envisioned by *Heck*, that the nature of the challenge to the procedures could be such as necessarily to imply the validity of the judgment." *Edwards*, 520 U.S. at 645.

Plaintiff's claims regarding his disciplinary proceedings are *Heck* barred. First, Plaintiff's disciplinary conviction clearly affects the duration of his sentence because he lost good-time credits as a result of that proceeding. As such Plaintiff's claims cannot proceed if they necessarily imply the invalidity of the disciplinary committee's judgment. But that is precisely what is at issue in Plaintiff's claims. Specifically, Plaintiff's allegation that Defendants found him guilty without identifying "clear facts" in the record necessarily implies the invalidity of the disciplinary board's findings against Plaintiff. This claim falls squarely into the category of *Heck* barred due process claims articulated by the Seventh Circuit in *Clayton-El* and *Dixon* and recognized by the Supreme Court in *Edwards*. *Edwards*, 520 U.S. at 645; *Dixon*, 101 F.3d at 1230–31; *Clayton-El*, 96 F.3d at 242–44. Plaintiff goes so far as to say that "he was found guilty without a sufficient evidentiary basis." [66, at 2.] This claim is a direct attack on the results of Plaintiff's hearing: *i.e.*, if, as Plaintiff argues, his guilty finding were based on insufficient evidence, then it shouldn't stand and Plaintiff should not have lost three months of good-time credit. See *Jones v. Watkins*, 945 F. Supp. 1143, 1147 (N.D. Ill. 1996) (finding *Heck* barred plaintiff's claim that the disciplinary committee's guilty finding lacked sufficient supporting evidence because "to establish the basis of [plaintiff's] damages claim, he necessarily would have to demonstrate the invalidity of his disciplinary sanctions"). Plaintiff's contention that Defendants did not establish the reliability of confidential informants is unavailing for the same reason. If the disciplinary committee's judgment were based on unreliable evidence, then Plaintiff should not have lost his good-time credit. These claims are *Heck* barred.

It is immaterial that Plaintiff (in his response memorandum) disavows seeking restoration of his good-time credits. Plaintiff now claims that he seeks only compensation for damages caused by the alleged denial of due process. [66, at 5.] But *Edwards* itself teaches that the *Heck*

9

bar applies if the plaintiff's allegations necessarily imply the invalidity of the disciplinary conviction, regardless of the remedy sought. *Edwards*, 520 U.S. at 648 (finding prisoner's claim *Heck* barred even though he sought money damages instead of restoration of good time credits); see also *Okoro*, 324 F.3d at 490 ("It is irrelevant that [plaintiff] disclaims any intention of challenging his conviction [because] * * * he makes allegations that are inconsistent with the conviction's having been valid * * *.").

Plaintiff's remaining "procedural" due process challenges to his disciplinary proceedings are also *Heck* barred. While more "procedural" in nature than his sufficiency-of-the-evidence claim, Plaintiff's challenge to the adequacy of his written notice (which allegedly did not concisely identify the offense or include the date, time, and place of the offense) and to the adequacy of his Final Summary Report (which allegedly did not include the entirety of Plaintiff's written statement) likewise fall under the category of due process claims articulated by the Seventh Circuit and the Supreme Court that are *Heck* barred. See *Edwards*, 520 U.S. at 645; *Dixon*, 101 F.3d at 1230–31; *Clayton-El*, 96 F.3d at 242–44. Importantly, in *Edwards* the Supreme Court rejected "the proposition that a claim challenging only a procedural defect, not a defective result, is always cognizable under § 1983." *Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000). Instead, "a claim that proves procedural defects of the kind that would necessarily mandate reversal of the proceedings * * * necessarily implies that the results of those proceedings were invalid." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 899 (7th Cir. 2001).

Here, each of Plaintiff's "procedural" claims questions the manner in which the disciplinary proceeding was conducted such that the validity of the sanctions ultimately imposed is undermined. This is evidenced by Plaintiff's own repeated proclamations that the inadequate

notice he received rendered him unable to prepare an effective defense. [57, Ex. A at 4; 66, at 1]; see also *Dixon*, 101 F.3d at 1230 (explaining that a claim challenging the "adequacy of the notice," rather than non-receipt of notice, is a "traditional due process claim" that is *Heck* barred); *Williams v. Langston*, 108 F.3d 1380, 1997 WL 113726, at *2 (7th Cir. 1997) (unpublished decision) (concluding that prisoner's claims that he was not granted a continuance to prepare his defense nor allowed to call witnesses were procedural in nature, yet still *Heck* barred claims regarding the manner the hearing was conducted). Plaintiff's "procedural" claims are also *Heck* barred.

### 2. Due Process Protections

Defendants argue in the alternative that even if Plaintiff's procedural challenges to his disciplinary proceedings were not *Heck* barred, there is no disputed issue of fact that Plaintiff received both notice and a written statement that comported with the due process requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539, 563–64 (1974). To succeed on his due process claims, Plaintiff must prove: (1) that he has "a cognizable liberty interest under the Fourteenth Amendment," (2) that he "was deprived of that liberty interest," and (3) "that the deprivation was without due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010); see also *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).

Defendants do not dispute that Plaintiff has a cognizable liberty interest in maintaining his good-time credits. *Wolff*, 418 U.S. at 557; see also *Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 1994) ("Good-time credits are statutory liberty interests once they have been awarded."); 730 Ill. Comp. Stat.. 5/3–6–3 *et seq.* Nor is there any dispute that Plaintiff was deprived of this liberty interest as a result of the disciplinary hearing, as Plaintiff had three months of good-time credits revoked.

The question, then, is whether the deprivation of Plaintiff's liberty interest was without due process. The due process protections afforded to an inmate during prison disciplinary hearing include: (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker;[1] and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. See *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). A disciplinary decision must also be supported by "some evidence" to satisfy due process. *Id.* at 941 (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)).

First, Plaintiff's DR satisfied *Wolff*'s written notice requirement. Adequate notice need only include "the number of the rule violated * * * and a summary of the facts underlying the charge." *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (per curiam). Here the DR identifies the offenses both by rule number and by name, and also provides a detailed written summary of the offenses alleged. As such, the notice satisfies federal due process requirements. Plaintiff's allegation that the notice in the DR does not comport with various Illinois administrative directives governing the preparation of disciplinary reports—whether true or not—is irrelevant. There is no independent constitutional right to a disciplinary proceeding that complies with prison administrative procedures. See *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004) ("Regardless of a plaintiff's insistence that a defendant failed to follow state law, the mere fact that state rules or statutes are violated does not in and of itself amount to a

---

[1] Plaintiff does not allege that he was denied due process on this ground. The facts support this omission: At the hearing, Plaintiff submitted a written statement wherein he denied being a leader of the Latin Folks, denied any involvement in the assault of Latin Folks members at Stateville, and faulted the DR for not describing the substance of any of the "deep conversations" observed at the Christmas Mass, but Plaintiff chose not to submit any other evidence, and also chose not to present any witnesses at the hearing. [57, ¶ 14–15.]

constitutional violation or give rise to an actionable § 1983 claim."); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (section 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations).

Second, Plaintiff's Final Summary Report satisfied *Wolff*'s requirement that an inmate receive "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Wolff*, 418 U.S. at 564–65). The written statement requirement "is not onerous." *Id.* The statement need only illuminate the evidentiary basis and reasoning behind the decision. *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992); *Saenz v. Young*, 811 F.2d 1172 (7th Cir. 1997); see also *Pardo v. Hosier*, 946 F.2d 1278, 1284 (7th Cir. 1991) (finding the following statement sufficient: "[B]ased on resident's statements and officer's report the committee is convinced resident violated AR 804 by cursing, making improper and disrespectful remarks to an employee and thereby causing a general disturbance"); *Culbert v. Young*, 834 F.2d 624, 625–27, 629–31 (7th Cir. 1987) (finding terse statements of reasoning to be adequate, despite existence of other evidence negating guilt). Here Plaintiff's Final Summary Report contains a detailed written description of the Adjustment Committee's rationale and the evidence relied upon—namely the results of the Stateville investigation—which well exceeds the due process requirements for such statements. And Plaintiff's argument that he was denied due process because the report included only a portion of his written statement, rather than the statement in full, is also without merit. Again, even if this were a violation of an Illinois administrative procedure, it does not run afoul of federal due process requirements. See *Whitman*, 368 F.3d at 935 n.1; *Scott*, 346 F.3d at 760.

For all these reasons, the Court grants summary judgment in favor of Defendants Tejada, Tarr, Hamilton, and Joyner on Plaintiff's claims regarding his disciplinary proceedings.

B. Grievance Handling

Plaintiff's claim that the handling of his grievance violated due process fails as a matter of law. Defendants correctly argue that state grievance procedures do not create substantive liberty interests protected by due process. See *Grieveson v. Anderson*, 538 F.3d 763, 772 & n.3 (7th Cir. 2008) ("[T]here is no substantive liberty interest in a *bona fide* grievance process * * *."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." (internal citation omitted)). The mishandling of a grievance therefore does not give rise to liability under § 1983. See *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures * * * do not be their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owens's grievances * * * states no claim."). Absent a cognizable liberty interest, Plaintiff's due process claim cannot stand. Accordingly, the Court grants summary judgment on this claim as well.

IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [56] is granted and judgment is entered in favor of Defendants.

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal in this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). The Court advises Plaintiff that, if he chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th

Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may accumulate a strike under 28 U.S.C. § 1915(g). If Plaintiff wishes to proceed *in forma pauperis* on appeal, he must file a motion with the District Court in the first instance demonstrating his inability to pay the appellate filing fee and setting forth the grounds for appeal. See Fed. R. App. P. 24.

Date: October 13, 2015

Robert M. Dow, Jr.
United States District Judge